















```
GAC    8/1/06    9:06
3:06-CV-01433    PROMARK SPORTS INC V. JACKSONVILLE JAGUARS
*5*
*P/A.*
```

Dockets.Justia.co

1
FOLEY & LARDNER LLP
ATTORNEYS AT LAW
402 W. BROADWAY, SUITE 2300
2
SAN DIEGO, CA 92101-3542
TELEPHONE: 619.234.6655
FACSIMILE: 619.234.3510
3

WENDY L. TUCKER, BAR NO. 174407
4
ATTORNEYS FOR DEFENDANT, JACKSONVILLE JAGUARS,
LTD.
5

6

7

```
FILED

JUL 2 6 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY
```

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10   PROMARK SPORTS, INC., A DELAWARE ) Case No. 06-CV-1433 WQH-NLS
     CORPORATION,                      )
11                                     )   **MEMORANDUM OF POINTS AND**
                PLAINTIFF,             )   **AUTHORITY IN SUPPORT OF**
12                                     )   **DEFENDANT'S MOTION TO**
          V.                           )   **DISMISS FOR LACK OF PERSONAL**
13                                     )   **JURISDICTION OR,**
     JACKSONVILLE JAGUARS, LTD., A    )   **ALTERNATIVELY, MOTION TO**
14   FLORIDA LIMITED PARTNERSHIP;      )   **DISMISS OR TRANSFER VENUE**
     JACKSONVILLE JAGUARS, A          )   **FOR IMPROPER FORUM OR,**
15   PURPORTED FLORIDA CORPORATION, AND )  **ALTERNATIVELY, MOTION TO**
     DOES 1 THROUGH 25 INCLUSIVE,      )   **ABATE OR STAY ACTION**
16                                     )
                DEFENDANT.             )   NO ORAL ARGUMENT UNLESS
17                                     )   REQUESTED BY THE COURT
                                       )
18                                     )   DATE:       September 18, 2006
                                       )   TIME:       11:00 a.m.
19                                     )   DEPT:       Courtroom 4
                                       )
20   _____)

21   ///

22

23

24

25

26

27

28

ORIGINAL

**Table of Contents**

Page

I.      BACKGROUND ......................................................................................1
        ARGUMENT ..........................................................................................3

II.     MOTION TO DISMISS STANDARD ....................................................3

III.    California Lacks Personal Jurisdiction Over the Jaguars .......................4

        1.      No General Jurisdiction ..............................................................4

        2.      No Specific Personal Jurisdiction ..............................................5

                1.      No Purposeful Availment ..................................................6

                2.      Plaintiff's Claim Does Not Arise Out of the Jaguars' Forum-
                        Related Activities .............................................................8

                3.      Exercising Personal Jurisdiction Over the Jaguars Would Be
                        Unreasonable ...................................................................9

                        a.      Degree of Interjection Into California is Minimal At
                                Best ....................................................................10

                        b.      Defending in California Would Be Unduly
                                Burdensome ........................................................10

                        c.      Conflict with the Sovereignty of Florida ...............10

                        d.      California's Interest in the Suit is Minimal ............11

                        e.      Florida is Most Efficient .....................................11

                        f.      Convenience and Effectiveness of Relief to ProMark ..........12

                        g.      Florida is an Adequate Alternative Forum .............12

IV.     Alternatively, the Jaguars Move to Dismiss or Transfer Venue to the
        Middle District of Florida, Jacksonville Division ................................12

        1.      Venue is Improper in the Southern District of California ...........13

        2.      In the Alternative, this Court Should Transfer the Case Pursuant to
                28 U.S.C. § 1404(a) ...................................................................15

V.      Finally, this Court Could Also Stay the Present Action Pending the
        Outcome of the First-Filed Florida Litigation .......................................19

VI.     Conclusion ...........................................................................................22

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Abrams Shell v. Shell Oil Co.*,
(2001) 165 F.Supp.2d 1096 ........................................................................ 13, 14

4

*American International Underwriters (Philippines), Inc. v. Continental Insurance*
*Co.*,
(1988) 843 F.2d 1253 ................................................................................. 19, 20

5

6

*Attwood v. Mendocine Coast District Hospital*,
(1989) 886 F.2d 241 ......................................................................................... 20

7

8

*Burger King Corp. v. Rudzweicz*,
(1985) 471 U.S. 462 .......................................................................................... 6, 7

9

*Colorado River Water Conservation District v. United States*,
(1976) 424 U.S. 800 ............................................................................................. 19

10

*Cook v. Fox*,
(1976) 537 F.2d 370 ............................................................................................. 13

11

12

*Core-Vent Corp. v. Nobel Industrial AB*,
(1993) 11 F.3d 1482 ............................................................................................... 9

13

*Costlow v. Weeks*,
(1986) 790 F.2d 1486 ........................................................................................... 14

14

15

*Dole Food Co., Inc. v. Watts*,
(2002) 303 F.3d 1104 ......................................................................................... 6, 12

16

*Hanson v. Denckla*,
(1958) 357 U.S. 235 ............................................................................................... 6

17

18

*Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*,
(2003) 328 F.3d 1122 .................................................................... 4, 6, 9, 11, 12

19

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
(1984) 466 U.S. 408 ............................................................................................... 5

20

21

*Hernandez v. Graebel Van Lines*,
(1991) 671 F.Supp. 983 ...................................................................................... 16

22

*International Show Co. v. State of Washington*,
(1945) 326 U.S. 310 ........................................................................................... 4, 5

23

24

*Loral Terracom v. Valley National Bank*,
(1995) 49 F.3d 555 ................................................................................................. 9

25

*McGlinchy v. Shell Chemical Co.*,
(1988) 845 F.2d 802 ........................................................................................... 5, 8

26

27

*Metropolitan-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
(2003) 243 F.Supp.2d 1073 ........................................................................ 3, 4, 9

28

ii

*Moses H. Cone Mem. Hospital v. Mercury Construction Corp.,*
(1983) 460 U.S. 1 ................................................................................ 20

*Roberson v. Norwegian Cruise Line,*
(1995) 897 F.Supp. 1285 ...................................................................... 15

*Saleh v. Titan Corp.,*
(2005 361 F.Supp.2d 1152.......................................... 15, 16, 18, 19

*Tampa Bay Storm, Inc. v. Arena Football League, Inc.,*
(1996) 932 F.Supp. 281 ........................................................................ 11

*Travelers Indemn. Co. v. Madonna,*
(1990) 914 F.2d 1364 ........................................................................... 22

*Von Grable v. Sprint PCS,*
(2003) 312 F.Supp.2d 1285 ............................................................. 4, 5

*Wood v. Santa Barbara Chamber of Committee,*
(1983) 705 F.2d 1515 ........................................................................... 14

*Y4 Design, Ltd. v. Regensteiner Public Enterprises, Inc.,*
(1977) 428 F.Supp. 1067 ...................................................................... 16

## STATE CASES

*CM Record Corp. V. MCA Records, Inc.*
(1985) 168 Cal.App.3d 965 .................................................................. 11

*Color-Vue, Inc. v. Abrams*
(1996) 44 Cal.App.4th 1599 ................................................................ 11

*Walter v. Superior Court*
(1986) 178 Cal.App.3d 677 ............................................................ 7, 11

## FEDERAL STATUTES

28 U.S.C. § 1391...................................................................................... 13

28 U.S.C. § 1404...................................................................................... 15

28 U.S.C. § 1406............................................................................ 1, 13, 14

California's Code of Civil Procedure § 410.10......................................... 4

Federal Rule of Civil Procedure 12(b) ..................................................... 1

Federal Rule of Civil Procedure 12(b) ..................................................... 3

Under Florida Rule of Civil Procedure 1.170........................................... 12

iii

1       After being served with a Complaint in a Florida action, and receiving an

2 extension to answer, Plaintiff ProMark Sports, Inc. ("ProMark") filed the present action

3 in the Superior Court of the State of California, County of San Diego, Central Division.

4 The Defendant, Jacksonville Jaguars, Ltd. (the "Jaguars"), timely removed the action to

5 this Court on July 14, 2006.[1] As a threshold matter, the Jaguars move this Court for an

6 Order finding that the Court lacks personal jurisdiction over it. However, even if this

7 Court should determine that it does have personal jurisdiction – which the Jaguars

8 vehemently contest – the Jaguars move this Court to dismiss or transfer venue of this case

9 to the Middle District of Florida, Jacksonville Division because the Court lacks venue or

10 on principles of *forum non conveniens* or alternatively, to abate or stay this action

11 pending resolution of the first-filed Florida action.

12 **I.   BACKGROUND**

13       On or about August 11, 2003, the Jaguars entered into a written agreement (the

14 "Agreement") with ProMark, which Agreement is attached to the Affidavit of Mackie

15 Weaver as Exhibit "A."[2]

16       In short, the Agreement provided that ProMark would produce coupon books that

17 would be sold through the Jaguars' retail partner, Winn-Dixie, for $1. J. Weaver Aff. ¶ 3.

18 All sale proceeds would benefit the Jacksonville Jaguars Foundation, a non-profit charity.

19 J. Weaver Aff. ¶ 4.    ProMark approached the Jaguars about this undertaking in

20 Jacksonville, Florida. J. Weaver Aff. ¶ 5. ProMark designed a marketing initiative for

21 these coupon books specifically to be carried out in the Jacksonville, Florida market. J.

22 Weaver Aff. ¶ 4. Three hundred thousand coupon books were delivered to the Jaguars in

23 Jacksonville, Florida. J. Weaver Aff. ¶ 6. The coupon books were distributed only in

24

25 _____

26     [1] There is not now, nor has there ever been, an entity known as Jacksonville Jaguars, a purported Florida Corporation.

27     [2] The facts supporting this motion are contained in the Affidavits of James

28 Weaver ("J. Weaver Aff. ¶ __") and John Tucker ("J. Tucker Aff. ¶ __").

FOLEY & LARDNER
LLP     SDCA_291011.1

1    Duval, St. Johns and Clay counties, all of which are in Florida (and in the Middle District

2    of Florida for the Federal District Courts).    J. Weaver Aff. ¶ 6.    Specifically,

3    approximately 50,000 books were distributed free of charge at one of the Jaguars' home

4    games. J. Weaver Aff. ¶ 6. The remaining 250,000 were given to Winn-Dixie for sale in

5    Duval, St. Johns and Clay counties. J. Weaver Aff. ¶ 6. Nothing in the Agreement

6    required the Jaguars to do anything outside of Florida. J. Weaver Aff. ¶ 7. The

7    Agreement provided that it would be governed by Florida law. J. Weaver Aff., Ex. A,

8    ¶ 7c.

9        In connection with the parties' performance under the Agreement, ProMark

10    alleged the Jaguars failed to distribute the coupon books as required and demanded that

11    the Jaguars pay it approximately $150,000 and threatened litigation if the money was not

12    paid. J. Weaver Aff. ¶ 9. The Jaguars deny that they breached their obligations or owe

13    any sum to ProMark, and accordingly, filed a declaratory judgment action in the State

14    Court for Duval County, Florida (the county where Jacksonville is located) on May 19,

15    2006 to determine the parties' respective rights and duties under the Agreement. J.

16    Tucker Aff. ¶ 2. ProMark was served with the Complaint and lawsuit in the Florida

17    action on May 22, 2006. J. Tucker Aff. ¶ 2, Ex. "A."

18        On the day following ProMark's deadline for filing a responsive pleading, counsel

19    for ProMark contacted the Jaguar's Florida counsel, John Tucker, to ask for an extension

20    to serve his response to the Florida action. J. Tucker Aff. ¶ 3. As a professional

21    courtesy, Mr. Tucker agreed to an extension to answer the Complaint. J. Tucker Aff. ¶ 3.

22        During that extension period, ProMark's counsel filed its Complaint in the

23    Superior Court of California, San Diego County on June 13, 2006, alleging that the

24    Jaguars had breached its obligations under the Agreement. See Complaint, attached as

25    Exhibit "B" to the Notice of Removal. Thus, ProMark's Complaint was filed 25 days

26    after the Jaguars' Complaint in the Florida action was filed, and 22 days after ProMark

27    was served in the Florida action.

28    / / /

2

FOLEY & LARDNER
LLP

SDCA_291011.1

1    ProMark then answered the Jaguars' Complaint on June 16, 2006. J. Tucker Aff.

2   ¶ 5. In the Answer, ProMark did not contest personal jurisdiction in the Florida court or

3   otherwise challenge the propriety of the Florida Court to adjudicate the pending claim. J.

4   Tucker Aff. ¶ 5, Ex. "B." On July 14, 2006, the Jaguars removed ProMark's California

5   action to federal court; hence, the present action.

6    Aside from Plaintiff (and its attorney) being located in California, this action has

7   absolutely no connection with California, and California courts do not have personal

8   jurisdiction over the Jaguars. The Jaguars are not organized or licensed to do business in

9   California, nor do they have a registered agent in California. J. Weaver Aff. ¶ 13. They

10   do not have offices, post office boxes, telephone listings or bank accounts in California.

11   J. Weaver Aff. ¶ 13. The Jaguars do not own or rent any real or personal property in

12   California. J. Weaver Aff. ¶ 13. Moreover, the Jaguars do not advertise, solicit business

13   or make sales in California. J. Weaver Aff. ¶ 13. In fact, the only contact that the

14   Jaguars have ever had with California is occasionally scouting for college football players

15   and the sporadic playing of football games in California -- which has only happened five

16   times in the past ten years. J. Weaver Aff. ¶ 14. Such contacts are insufficient to give

17   rise to personal jurisdiction for the pending claims which are wholly unrelated to the

18   playing of those games. Moreover – and to the extent that the Court even reaches these

19   issues – given the focus of the activities in Florida, California is a wholly inconvenient

20   forum, and the California action should be abated or stayed pending resolution of the

21   first-filed Florida action (discussed in the later-part of this memorandum).

22                              **ARGUMENT**

23   **II.    MOTION TO DISMISS STANDARD**

24    When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure

25   12(b)(2), the *plaintiff* bears the burden of establishing personal jurisdiction. Metro-

26   Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 243 F.Supp. 2d 1073, 1082 (C.D. Cal.

27   2003). "For purposes of a motion to dismiss, factual allegations are taken as true, though

28   it is appropriate when considering jurisdictional issues to look beyond the pleadings to

                                    3

1    any evidence before the Court." Id.

2    To determine whether personal jurisdiction exists, the court must apply the law of

3    the state in which the district court sits.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &

4    Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).  Thus, "a court may 'exercise

5    personal jurisdiction over a non-resident [defendant] if jurisdiction is proper under

6    California's long-arm statute and if that exercise accords with the federal constitutional

7    due process principles.'"  Von Grable v. Sprint PCS, 312 F.Supp.2d 1285, 1293 (S.D.

8    Cal. 2003) (citation omitted).  California's Code of Civil Procedure § 410.10 (its long-

9    arm statute) authorizes personal jurisdiction "on any basis not inconsistent with the

10   Constitution of this state or of the United States."  Hence, this court must only consider

11   whether exercising personal jurisdiction over the Jaguars meets the requirements of due

12   process. Harris Rutsky, 328 F.3d at 1129.

13   **III.    California Lacks Personal Jurisdiction Over the Jaguars**

14   There are two types of personal jurisdiction: general and specific.  "General

15   personal jurisdiction enables a court to hear cases unrelated to the defendant's forum

16   activities if the defendant has 'substantial' or 'continuous and systematic' contacts with

17   the forum state."  Von Grable, 312 F.Supp. 2d at 1293.  Specific jurisdiction exists

18   "where the cause of action arises out of or relates to the defendant's contacts with the

19   forum."  Metro-Goldwyn-Mayer, 243 F.Supp. 2d at 1082.  For the reasons explained

20   below, the Jaguars are not subject to either type of personal jurisdiction in California.

21   **1.    No General Jurisdiction**

22   Federal courts have recognized that general personal jurisdiction requires a "fairly

23   high" showing by the plaintiff that the defendant's contacts with the forum are "of the

24   sort that 'approximate physical presence.'"  Id. at 1083 (citations omitted).  The oft-

25   quoted phrase is that the a court's exercise of personal jurisdiction must satisfy

26   "'traditional notions of fair play and substantial justice.'"  Id. (quoting International Show

27   Co. v. State of Washington, 326 U.S. 310, 316 (1945)).  The courts consider a number of

28   factors to determine if general personal jurisdiction is satisfied, including: "whether the

4

FOLEY & LARDNER
LLP                SDCA_291011.1

1  defendant is incorporated or licensed to do business in the forum state, has offices,

2  property, employees or bank accounts there, pays taxes, advertises or solicits business, or

3  makes sales in the state." Id. at 1083-84; see also McGlinchy v. Shell Chem. Co., 845

4  F.2d 802, 816 (9th Cir. 1988); Von Grable, 312 F.Supp. 2d at 1295.

5        In the instant case, the Jaguars are a Florida limited partnership.  They are not

6  incorporated or otherwise licensed to do business in California, nor have they ever been

7  so licensed.  J. Weaver Aff. ¶ 13.  The Jaguars do not have offices, post office boxes,

8  telephone listings or bank accounts in California.  J. Weaver Aff. ¶ 13.  The Jaguars do

9  not own or rent any real or personal property in California.  J. Weaver Aff. ¶ 13.

10  Moreover, the Jaguars do not advertise, solicit business or make sales in California.  J.

11  Weaver Aff. ¶ 13.  In fact, the only contact that the Jaguars have with California is

12  occasionally scouting for college football players and the sporadic playing of football

13  games in California – which has only happened five times in the past ten years.  J.

14  Weaver Aff. ¶ 14.  "Such lack of contacts generally are held sufficient to successfully

15  challenge the exercise of general jurisdiction."  Von Grable, 312 F.Supp. 2d at 1295

16  (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416

17  (1984)("Texas did not have general jurisdiction over a foreign corporation whose only

18  contacts were sending one of its officers to negotiate a contract, sending personnel to

19  train in Texas, accepting checks drawn on a Texas bank, and purchasing equipment from

20  a Texas firm.")).  Accordingly, the Jaguars simply do not have the "continuous and

21  systematic" contacts that are required to establish general personal jurisdiction.

22        **2.    No Specific Personal Jurisdiction**

23        California also lacks specific personal jurisdiction over the Jaguars.  A court may

24  only exercise specific jurisdiction over a defendant when each of three requirements are

25  met:

26        (1) The non-resident defendant must purposefully direct his
           activities or consummate some transaction with the forum or
27        resident thereof; or perform some act by which he
           purposefully avails himself of the privileges of conducting
28        activities in the forum, thereby invoking the benefits and
           protections of its laws;            5

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). In this case, none of the three requirements are satisfied.

### 1.    No Purposeful Availment

The first prong of the specific jurisdiction test "requires a 'qualitative evaluation of the defendant's contacts with the forum state,' in order to determine whether '[the defendant's] conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.'" Harris Rutsky, 328 F.3d at 1130 (citations omitted). A defendant should "reasonably anticipate being haled into court" in another forum where that defendant has "'reach[ed] out beyond one state and creat[ed] continuing relationships and obligations with citizens of another state . . . .'" Burger King Corp. v. Rudzweicz, 471 U.S. 462, 473 (1985) (citation omitted). However:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of **conducting activities within the forum State**, thus invoking the benefits and protections of its laws."

Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (emphasis added).

In this case, the Jaguars have made no purposeful availment of the California forum for its business activities with ProMark. Rather, ProMark approached the Jaguars in Florida about a deal in which ProMark would produce coupon books that would be sold in Florida through the Jaguars' retail partner, Winn-Dixie, for $1. J. Weaver Aff. ¶ 3. All sale proceeds would benefit the Jacksonville Jaguars Foundation, a non-profit charity. J. Weaver Aff. ¶ 4. This arrangement was documented in the Agreement. J. Weaver Aff., Ex. A. ProMark approached the Jaguars about this undertaking in Jacksonville, Florida. J. Weaver Aff. ¶ 5. The coupon books were delivered to the

6

1   Jaguars in Jacksonville, Florida.  J. Weaver Aff. ¶ 6.  The coupon books were then

2   distributed only in Duval, St. Johns and Clay counties, all of which are in Florida.  J.

3   Weaver Aff. ¶ 6.  The alleged breaches of the Agreement about which ProMark now

4   complains all concern the Jaguars' distribution of the coupon books.  Comp. ¶ 14.

5   Nothing in the Agreement required the Jaguars to perform outside of Florida.  J. Weaver

6   Aff. ¶ 7.  The Jaguars were not obligated to pay ProMark any money under the

7   Agreement.  J. Weaver Aff. ¶ 10, Ex. "A."  The Agreement provided that it would be

8   governed by Florida law.  J. Weaver Aff., Ex. "A," ¶ 7c.  The only tie the Jaguars have to

9   California in this case is that ProMark and its attorney are located there.

10          All of these facts demonstrate that the parties contemplated performance of the

11  Agreement in Florida.  The United States Supreme Court has consistently held that an

12  "individual's contract with an out-of-state party *alone* can[not] automatically establish

13  sufficient minimum contacts in the other party's home forum . . . ."  Id. at 478.  Rather,

14  when looking at a contract, the court must consider negotiations, future consequences, the

15  terms of the contract, and the parties' course of dealings to determine whether a

16  defendant purposely availed itself of the other contracting party's forum.  Id. at 479.

17  Since ProMark reached into Florida to solicit the Jaguars' participation with its coupon

18  books, agreed to (and did) deliver the coupon books to Florida for distribution

19  exclusively in Florida, these factors reveal no intention by the Jaguars to purposely avail

20  itself of California laws.  Rather, the Agreement is one which was to be performed in

21  Florida, and if it was breached (which it was not) by failing to properly distribute the

22  coupon books, by necessity, that breach also happened in Florida.  See Walter v. Superior

23  Court (1986) 178 Cal.App.3d 677, 680-81 (finding no personal jurisdiction under similar

24  circumstances).

25          Moreover, that ProMark is located in California is purely fortuitous.  Due process

26  does not permit jurisdiction over a non-resident defendant as a result of purely "'random,'

27  'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party . . . .'"

28  Burger King, 471 U.S. at 475 (citations omitted).  Thus, the Jaguars cannot be haled into

FOLEY & LARDNER
LLP

SDCA_291011.1

1  the courts of California to answer on a contract that was negotiated and performed in

2  Florida simply because ProMark initiated contact with the Jaguars from California.

3  Additionally, since the Agreement calls for construction in accordance with Florida law,

4  the parties showed their intent to perform under Florida's law, and contemplated

5  litigation there. See id. at 482.

6      This case is much like the Ninth Circuit case of McGlinchy, 845 F.2d at 816,

7  where a plaintiff claimed a defendant purposefully availed itself of California's laws by

8  signing a contract in California. The court disagreed for four reasons: (1) the contract

9  was negotiated in England; (2) the contract made no reference to California; (3) the

10  defendant did not perform any portion of the contract in California; and (4) the plaintiff's

11  unilateral acts in California could not subject the defendant to jurisdiction. Id. Similarly,

12  (1) the Agreement in this case was negotiated by the Jaguars in Florida; (2) California is

13  mentioned *only* as ProMark's address; (3) the Jaguars did not perform any part of the

14  Agreement in California; and (4) ProMark's presence in California is unilateral. As the

15  Ninth Circuit explained, "'[a plaintiff's] performance in California cannot give

16  jurisdiction over ... [a nonresident defendant]; it is [a defendant's] activity that must

17  provide the basis for jurisdiction.' Here, the complete absence of activity by [the

18  defendant] in California bars personal jurisdiction over" the Jaguars. Id. at 816-17

19  (citations omitted).

20      2.    **Plaintiff's Claim Does Not Arise Out of the Jaguars' Forum-**

21          **Related Activities**

22      Since ProMark cannot establish that the Jaguars purposefully availed itself of

23  California's laws, this Court need not even consider the second and third factors in the

24  specific personal jurisdiction test. Id. at 817. However, an examination of the second

25  factor (whether plaintiff's claims arise out of defendant's forum-related activities) further

26  illustrates why California lacks specific personal jurisdiction.

27      The **only** activities the Jaguars have conducted in California are occasionally

28  scouting for college football players and the playing of five football games in the past ten

8

1    years.[3] J. Weaver Aff. ¶ 14. But, "[c]ontacts with a forum state are relevant for purposes

2    of specific jurisdiction only if they are sufficiently related to the cause of action." Metro-

3    Goldwyn-Mayer, 243 F.Supp. 2d at 1085. The Ninth Circuit applies a "but for" test, to

4    determine if "but for" the contacts, the claim would still have arisen. Id. (citing Loral

5    Terracom v. Valley National Bank, 49 F.3d 555, 561 (9th Cir. 1995)). "Thus, if

6    Plaintiff's claims would have arisen notwithstanding certain contacts, those contacts are

7    not relevant to the jurisdictional analysis." Id. Obviously, ProMark's claims against the

8    Jaguars for distributing coupon books in Florida would have arisen regardless of whether

9    the Jaguars scouted for talent or played any football games in California. Therefore, the

10   Jaguars' presence in California for football is irrelevant to the personal jurisdiction

11   analysis in this case and cannot form the basis for exercising personal jurisdiction.

12                  **3.      Exercising Personal Jurisdiction Over the Jaguars Would Be**

13                  **Unreasonable**

14        In this case, even if the Court were to determine that the Jaguars had contacts with

15   California and ProMark's claims arise out of those contacts – facts the Jaguars strongly

16   protest – the exercise of personal jurisdiction over the Jaguars would still be

17   unreasonable. The Ninth Circuit weighs seven factors to determine reasonableness:

18                  (1) the extent of the defendant's purposeful interjection into
                    the forum state's affairs; (2) the burden on the defendant in
19                  defending in the forum; (3) the extent of the conflict with the
                    sovereignty of the defendant's state; (4) the forum state's
20                  interest in adjudicating the dispute; (5) the most efficient
                    judicial resolution of the controversy; (6) the importance of
21                  the forum to the plaintiff's interest in convenient and effective
                    relief; and (7) the existence of an alternative forum.
22
     Harris Rutsky, 328 F.3d at 1132 (quoting Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d
23
     1482, 1487-88 (9th Cir. 1993)). As explained below, the balance of these factors tips
24

25
          [3] It bears repeating that the Jaguars did not have any performance obligations
26   under the Agreement in California. ProMark approached the Jaguars in Jacksonville,
     Florida about the coupon books and all of the Jaguars' contractual undertakings took
27   place (or were to take place) in Florida. Indeed, the concept was to distribute the coupon
     books to Jaguars fans, who generally speaking, reside in or around Jacksonville, Florida.
28

                                                  9

1  overwhelmingly in favor of finding personal jurisdiction over the Jaguars would be

2  unreasonable.

### a.    Degree of Interjection Into California is Minimal At Best

4  Even if the Court does find that the Jaguars purposefully availed itself of the

5  privileges of conducting affairs in California by entering into the Agreement with

6  ProMark, it still must consider "the degree of interjection." Id. Unlike the defendant in

7  Harris Rutsky, who conducted 20% of its business in California, and performed under a

8  contract with the plaintiff in California (id.), the Jaguars do no business in California and

9  the entirety of its performance under the Agreement took place in Florida. Thus, to the

10  extent that the Court concludes the Jaguars have any contact with California, that contact

11  is minimal at best.

### b.    Defending in California Would Be Unduly Burdensome

13  The Jaguars are a Florida limited partnership that does not conduct business in

14  California. It is headquartered in and conducts all business from Jacksonville, Florida –

15  literally across the country from this forum.    Although "modern advances in

16  communications and transportation" might reduce the burdens that once existed on out-

17  of-state defendants (id. at 1133), defending against ProMark's action in California would

18  nonetheless be unduly burdensome. The entirety of the Jaguars' performance under the

19  Agreement took place in Florida. The distribution of the coupon books took place only in

20  Florida. Thus, all of the Jaguars' witness (whether employees, former employees, Winn-

21  Dixie employees or other third parties) are all located there. Undertaking to defend this

22  action in California would place an undue burden on the Jaguars as its access to witness

23  would be potentially limited and the costs associated with maintaining a defense four

24  time zones away would be hefty.

### c.    Conflict with the Sovereignty of Florida

26  The sovereignty of Florida, and its interest in adjudicating the present controversy

27  there, also weigh in favor of the Jaguars. In the first instance, the Agreement provides

28  that it is to be governed by Florida law. J. Weaver Aff., Ex. A. Florida courts have

10

1   generally recognized that Florida is the better forum for interpreting and applying Florida

2   law due to familiarity.  See Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932

3   F.Supp. 281, 283 (M.D. Fla. 1996).   Moreover, the disputed conduct took place in

4   Florida, the Jaguars are a Florida limited partnership and the Jaguars' witnesses are

5   located in Florida.  The Ninth Circuit has found that these factors weigh in a defendant's

6   favor when considering reasonableness of personal jurisdiction.  Harris Rutsky, 328 F.3d

7   at 1133.  This factor should have particular significance also because these issues are

8   already the subject of a lawsuit in the Florida courts, which lawsuit had already begun

9   when ProMark decided to start a second case on the same issues in California.

10              **d.    California's Interest in the Suit is Minimal**

11          Borrowing from one of California's appellate courts:

12                  This is a private dispute between two individuals in which
                    neither the general population of California nor the California
13                  courts have any particular interest (aside from providing a
                    forum for plaintiff, a California resident).
14

15   Walter v. Superior Court (1986) 178 Cal.App.3d 677, 681.  In the present case, California

16   has even less of interest in providing a forum, since ProMark has allowed its status as a

     California corporation to lapse and is currently listed as "forfeited."  J. Tucker Aff. ¶ 7,
17
     Ex. "C."  ProMark, a Delaware corporation, also has a "void" status in Delaware for
18
     being delinquent in the payment of its taxes.  J. Tucker Aff. ¶ 7, Ex. "D."  Given these
19
     facts, the state courts of California would not permit ProMark to maintain the present
20
     litigation due to its deficient status.  See Color-Vue, Inc. v. Abrams (1996) 44 Cal.App.4th
21
     1599, 1603-04 ("suspension of corporate powers results in a lack of capacity to sue . . .
22
     ."); CM Record Corp. V. MCA Records, Inc. (1985) 168 Cal.App.3d 965, 968-69
23
     (foreign corporation whose powers have been suspended in its home state for the
24
     nonpayment of corporate taxes there also lacks capacity to sue in California).   Given
25
     California's de minimus interest in this case, this factor is neutral at best.
26
                **e.    Florida is Most Efficient**
27
          To determine which forum would most efficiently resolve the case, the Ninth
28

                                              11

FOLEY & LARDNER
LLP          SDCA_291011.1

1  Circuit places its "focus on the location of the evidence and the witnesses." <u>Harris</u>

2  <u>Rutsky</u>, 328 F.3d at 1133. As explained above, all of the distribution efforts related to the

3  coupon books took place in Florida. Thus, the evidence and witnesses are located in

4  Florida. And, not insignificantly, the Florida court in which the Jaguars' declaratory

5  judgment action is pending has already set the matter for trial on November 20, 2006 and

6  the parties are attempting to schedule mediation for sometime in September 2006. J.

7  Tucker Aff. ¶ 6. Having scheduled a trial a mere four months away, Florida must

8  certainly be seen as the most efficient forum to conduct litigation between the parties.

9              **f.    Convenience and Effectiveness of Relief to ProMark**

10         The Ninth Circuit has said that "the plaintiff's convenience is not of paramount

11  importance." <u>Dole Food Co.</u>, 303 F.3d at 1116. This is because "'no doctrine in

12  astrophysics is required to deduce that trying a case where one lives is almost always a

13  plaintiff's preference.'" <u>Harris Rutsky</u>, 328 F.3d at 1133 (citation omitted). That being

14  said, ProMark's convenience in this case should be viewed with even less importance

15  since it has not contested jurisdiction in the Jaguars' first-filed Florida action, it came into

16  Florida to contract with the Jaguars, and ProMark delivered coupon books to Florida.

17              **g.    Florida is an Adequate Alternative Forum**

18         Finally, this Court must consider whether an adequate alternative forum exists for

19  ProMark's claims. "The plaintiff bears the burden of proving the unavailability of an

20  alternative forum . . . ." <u>Id.</u> at 1133-34. Clearly, ProMark cannot meet that burden

21  because Florida is such a forum. ProMark answered the Jaguars' complaint in Florida

22  and did not contest personal jurisdiction. J. Tucker Aff. ¶ 5. Under Florida Rule of Civil

23  Procedure 1.170(a), ProMark's present lawsuit should have been brought as a

24  compulsory counter-claim. Thus, this factor also weighs in favor of the Jaguars.

25                                          *  *  *

26         For the foregoing reasons, ProMark cannot establish specific personal jurisdiction

27  over the Jaguars.

28  ///

12

1    **IV.    Alternatively, the Jaguars Move to Dismiss or Transfer Venue to the Middle**

2    **District of Florida, Jacksonville Division**

3    The Jaguars believe that this Court need never reach this issue because California

4    does not have personal jurisdiction over it.  However, to the extent that this Court finds

5    otherwise, and to preserve the timeliness of the argument, the Jaguars alternatively move

6    to dismiss for improper venue or to transfer this action to the Middle District of Florida,

7    Jacksonville Division.

8    **1.    Venue is Improper in the Southern District of California**

9    In federal courts, venue is a creature of statute, articulated at 28 U.S.C. § 1391.

10   Whenever venue has been improperly laid in a particular district, the court must either

11   dismiss or transfer the action under 28 U.S.C. § 1406.  Abrams Shell v. Shell Oil Co., 165

12   F.Supp. 2d 1096, 1102 (C.D. Cal. 2001).  In this case, there is no basis for laying venue

13   in the Southern District of California under 28 U.S.C. § 1391(a), which provides:

14   (a) A civil action wherein jurisdiction is founded only on
     diversity of citizenship may, except as otherwise provided by

15   law, be brought only in

16   (1) a judicial district where any defendant resides, if all
     defendants reside in the same State,

17

18   (2) a judicial district in which a substantial part of the events
     or omissions giving rise to the claim occurred, or a substantial
     part of property that is the subject of the action is situated, or

19

20   (3) a judicial district in which any defendant is subject to
     personal jurisdiction at the time the action is commenced, if
     there is no district in which the action may otherwise be

21   brought.

22   Subsection (c) further provides: "For purposes of venue under this chapter, a

23   defendant that is a corporation shall be deemed to reside in any judicial district in which

24   it is subject to personal jurisdiction at the time the action is commenced. ..."  As

25   explained above, the Jaguars are not subject to personal jurisdiction in California;

26   therefore, it cannot be said to reside in the Southern District of California.  Accordingly,

27   subsection (a)(1) of the venue statute is not satisfied and this Court should dismiss.  See

28   Cook v. Fox, 537 F.2d 370, 371 (9th Cir. 1976) (where district court lacked personal

13

1    jurisdiction and venue, it did not err in dismissing rather than transferring action).

2        Subsection (a)(2) also cannot be satisfied because <u>all</u> of the events that gave rise to

3    ProMark's causes of action took place in Florida.  ProMark's grievances against the

4    Jaguars center around the Jaguars' distribution of coupon books.  ProMark delivered

5    300,000 coupon books to the Jaguars in Florida, the Jaguars gave 250,000 the books to its

6    retail partner, Winn-Dixie, for distribution in three Florida counties, and the remaining

7    50,000 books were distributed at one of the Jaguars' home games in Jacksonville,

8    Florida. J. Weaver Aff. ¶ 8.  Where "virtually all of the activity providing the basis of the

9    complaint took place in" another state, the Ninth Circuit has upheld a district court's

10   decision to dismiss for lack of venue.  <u>Costlow v. Weeks</u>, 790 F.2d 1486, 1488 (9th Cir.

11   1986).  Similarly, since all of the complained-of activity took place in Florida, this Court

12   should find venue improper under § 1391(a)(2) and dismiss.

13       Finally, ProMark cannot satisfy the "catch all" venue provision of (a)(3), which

14   allows venue to be brought wherever the defendant is subject to personal jurisdiction.

15   <u>See generally</u> <u>Abrams Shell</u>, 165 F.Supp. 2d at 1108 n.6.  The only district which fits

16   within the (a)(3) category is the Middle District of Florida, because that district

17   undeniably has personal jurisdiction over the Jaguars.

18       Since ProMark cannot establish the venue requirements necessary to maintain its

19   action in the Southern District of California, this Court has two options: dismissal or

20   transfer.  While the Court has some discretion in deciding which of the options its picks,

21   28 U.S.C. § 1406(a) limits transfer to those cases in which transfer would be "in the

22   interest of justice."  <u>See id.</u> at 1103; <u>Wood v. Santa Barbara Chamber of Comm.</u>, 705

23   F.2d 1515, 1523 (9th Cir. 1983).  The Ninth Circuit has found that transfer is not in the

24   interests of justice when transfer would place a plaintiff back in a forum it deliberately

25   sought to avoid.  <u>Wood</u>, 705 F.2d at 1523.  Such is precisely the case here: the Jaguars

26   first filed an action against ProMark in Florida state court.  ProMark did not contest

27   jurisdiction or venue, and could have removed the action to the Middle District of Florida

28   and/or filed a counterclaim.  It did neither.  Instead, while provided the professional

14

FOLEY & LARDNER
LLP

SDCA_291011.1

1  courtesy of an extension of time to answer given by the Jaguars' counsel, ProMark filed

2  its own complaint in California.  J. Tucker Aff. ¶¶ 3-4.  Under these circumstances,

3  justice has no interest in seeing this case transferred.[4]  Rather, like the Ninth Circuit cases

4  of <u>Costlow</u> and <u>Weeks</u>, this Court should dismiss.[5]

5  **2.   In the Alternative, this Court Should Transfer the Case Pursuant to 28**

6  **U.S.C. § 1404(a)**

7       If this Court should determine that venue is appropriate in this Court – which the

8  Jaguars obviously deny – then the Jaguars request that the Court transfer venue to the

9  Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1404(a).  That

10  statute is the codification of the common law doctrine of *forum non conveniens* and

11  provides: "(a) For the convenience of parties and witnesses, in the interest of justice, a

12  district court may transfer any civil action to any other district or division where it might

13  have been brought."  As explained below, the Middle District of Florida is a far more

14  convenient forum for vast majority of witnesses in this case (many of whom are not

15  employed by the Jaguars) and the interests of justice favor transfer should this Court

16  otherwise determine not to dismiss the case.

17       As explained by the court in <u>Saleh v. Titan Corp.</u>, 361 F.Supp.2d 1152, 1156 (S.D

18  Cal. 2005), courts consider ten factors in determining whether to transfer an action

19  pursuant to 28 U.S.C. § 1404(a).  Those factors are:

20           (1) the plaintiffs' choice of forum; (2) the extent to which
21           there is a connection between the plaintiff's causes of action

---

22  [4]  An example of transferring a case in the interests of justice is where the plaintiff
23  might otherwise have a statute of limitations problem.  <u>Roberson v. Norwegian Cruise Line</u>, 897 F.Supp. 1285, 1289 (C.D. Cal. 1995).  ProMark faces no such problem here, as Florida's statute of limitations on written contract actions is five years, <u>see</u> § 95.11(2)(b),
24  Fla. Stat. (2006), and the Agreement and actions there under took place in 2003.

25  [5]  Also, if the case is simply transferred to the Jacksonville Federal Court, that
26  court will then unnecessarily have to address the pending motion to abate or stay, and the Federal Court would most likely stay or dismiss the action given the existence of a pending, earlier-filed action on the same issues in the Jacksonville state court.  Thus, a
27  transfer as opposed to a dismissal simply will create additional unnecessary work for the Jacksonville Federal Court.

28

15

FOLEY & LARDNER
LLP

SDCA_291011.1

and this forum; (3) the parties' contacts with this forum; (4) the convenience of witnesses; (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (6) the ease of access to sources of proof; (7) the existence of administrative difficulties resulting from court congestion; (8) whether there is a "local interest in having localized controversies decided at home"; (9) whether unnecessary problems in conflict of laws, or in the application of foreign law, can be avoided; and (10) the unfairness of imposing jury duty on citizens in a forum unrelated to the action.

Id.  As explained below, the overwhelming majority of factors favor transfer to the Middle District of Florida in the event that this Court finds that this district is technically a "proper" forum.

The first factor – plaintiff's choice of forum – and the second factor – the connection of the action to the forum – are best discussed together.  Because § 1404 was enacted to allow transfer of actions, rather than dismissal under the common law doctrine of *forum non conveniens*, the plaintiff's choice of forum "'is no longer given the overriding consideration it may once have enjoyed . . . .'"  Id. (quoting Y4 Design, Ltd. v. Regensteiner Pub. Enterprises, Inc., 428 F.Supp. 1067, 1070 (S.D.N.Y. 1977)).  Moreover, "numerous courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum."  Id. at 1157.  The Saleh court specifically noted the case of Hernandez v. Graebel Van Lines, 671 F.Supp. 983, 990-91 (E.D.N.Y. 1991) as finding that the plaintiff's choice of forum in New York was entitled to "less significance" since "the accident occurred in Florida and most of the witnesses were there and the only connection with New York was that the plaintiff resided in New York and received treatment there."  Saleh, 361 F.Supp. 2d at 1157.  Similarly, in this case, all of the actions that allegedly breached the Agreement happened in Florida, nearly all of the witnesses are located in Florida and the only connection to California is that ProMark and its attorney are located there.  See J. Weaver Aff. ¶¶ 13-14.  Furthermore, ProMark only attempted to bring an action in California after being served with process in the Florida action.  J. Tucker Aff. ¶¶ 2-4.  Thus, the plaintiff's choice of forum should be given little, if any, significance in this case because there is no

16

1    connection between California and ProMark's claims.

2         The third factor is the parties' contacts with the forum. As explained in great

3    detail in the section on personal jurisdiction, the Jaguars do not have minimal contacts

4    with California. See J. Weaver Aff. ¶¶ 13-14. ProMark contacted the Jaguars in Florida

5    to undertake the distribution of coupon books in Florida. J. Weaver Aff. ¶ 5. The only

6    connection this action has to California is that ProMark and its counsel reside here. Thus,

7    when considering this factor, the Court should determine that it favors transfer to the

8    forum where all of the events giving rise to the Complaint took place. Id. at 1160.

9         The fourth factor is the convenience of witnesses. This factor is "'often

10   recognized as the most important factor to be considered in ruling on a motion under

11   § 1404(a).'" Id. (citation omitted). While the Court should consider the convenience of

12   party witnesses, "the convenience of non-party witnesses is the more important factor.'"

13   Id. (citation omitted). As explained in Mr. Weaver's affidavit, there are at least six party

14   and non-party witnesses who reside in or around Jacksonville, Florida, all of whom are

15   the critical witnesses concerning execution and performance of the Agreement. J.

16   Weaver Aff. ¶ 12. In contrast, the only person with knowledge concerning performance

17   of the Agreement on ProMark's side is its CEO, Gary Ravet, who is a party witness

18   residing in California. J. Weaver Aff. ¶ 12. Thus, this factor weighs heavily in favor of

19   transfer.

20        Moreover, because many of the material witnesses are third-parties rather than

21   parties, the fifth factor – the ability of compulsory process to compel attendance of

22   unwilling non-party witnesses – also weighs in favor of transfer. The former employee

23   who executed the Agreement for the Jaguars, the Jaguars' former employee who

24   coordinated distribution of the books with Winn-Dixie and the Winn-Dixie employee

25   who oversaw distribution of the books would all have to be subpoenaed for deposition

26   and trial testimony. Since these witnesses reside in the Middle District of Florida, and

27   that court would obviously have the power to issue subpoenas to those individuals, this

28   factor also weighs heavily in favor of transfer. See id. at 1165-66.

17

1      The sixth factor, dealing with ease of access to sources of proof, also weighs in

2  favor of transfer. Under this factor, the Court must consider how easily proof can be

3  obtained, "not whether the evidence would be unavailable absent the transfer." Id. at

4  1166. All of the proof surrounding distribution of the coupon books is, by necessity,

5  located in the three Florida counties where the books were distributed. Thus, proof

6  concerning the Jaguars' performance under the Agreement, in respect to distribution of

7  the books, would be more easily obtained in the Middle District of Florida.

8      The seventh factor concerns the congestion of the courts. As this Court has

9  already articulated in Saleh, the Southern District of California has a congested docket.

10  Id. at 1167. According to http://www.uscourts.gov/cgi-bin/cmsd2005.pl, the average

11  time for a civil case to proceed to trial in 2005 in the Southern District of California was

12  25.4 months, whereas civil cases averaged only 20 months from filing to trial in the

13  Middle District of Florida. Since this factor concerns which forum is speedier, and the

14  Middle District of Florida is typically the faster forum, this factor also weighs in favor of

15  transfer. Saleh, 361 F.Supp. at 1167.

16      The eighth factor examines whether there is a local interest in having local

17  controversies heard at home and, as a corollary, the tenth factor asks whether imposing

18  jury duty on forum residents when the forum has no interest would be unfair. The events

19  giving rise to ProMark's Complaint all occurred in Jacksonville, Florida. Moreover, as

20  explained above, California does not have a significant interest in this litigation since

21  ProMark's corporate status prevents it from even maintaining lawsuits in California's

22  state courts. J. Tucker Aff., Ex. "C" and "D." Also, the Agreement requires

23  interpretation in accordance with Florida laws, so Florida has the greater interest in that

24  respect. J. Weaver Aff., Ex. "A." "Given the minimal contacts this jurisdiction has with

25  this controversy, it would place an unnecessary burden on jurors in this district to hear the

26  action." Id. Therefore, the eighth and tenth factors also weigh heavily in favor of

27  transfer to the Middle District of Florida.

28  ///

18

FOLEY & LARDNER
LLP

SDCA_291011.1

1    Finally, the ninth factor considers "whether unnecessary problems in conflict of

2   laws, or the application of foreign law, can be avoided" by transferring the action to

3   another forum. Id. at 1156. As mentioned above, the Agreement requires interpretation

4   in accordance with Florida law. J. Weaver Aff., Ex. "A." Although there is nothing

5   particularly difficult or unsettled about Florida contract law, the Middle District of

6   Florida would be far more familiar with Florida's laws and Florida has an interest in

7   interpreting its own laws. Id. at 1167. Accordingly, this factor also favors transfer.

8    Based upon the foregoing, it is apparent that the § 1404(a) factors weighed by this

9   Court to decide whether to transfer an action overwhelmingly tip the scales in favor of

10   transfer to the Middle District of Florida. Therefore, "the convenience of parties and

11   witnesses," as well as the "interest of justice" mandate transfer if the action is not

12   dismissed.

13   **V.    Finally, this Court Could Also Stay the Present Action Pending the Outcome**
14        **of the First-Filed Florida Litigation**

15    Again, the Jaguars firmly believe that the Court need not reach this matter because

16   the action should be dismissed for lack of jurisdiction and improper venue. However, in

17   the unlikely event that this Court finds otherwise, the Jaguars respectfully request that the

18   Court stay this action pending the outcome of the first-filed Florida litigation.

19    The Ninth Circuit case of American Int'l Underwriters (Philippines), Inc. v.

20   Continental Ins. Co., 843 F.2d 1253 (9th Cir. 1988) is instructive on when federal courts

21   should decline to exercise jurisdiction in favor of state court actions. Although it is the

22   exception rather than the rule, abstention is appropriate in the right circumstances to

23   "promote 'wise judicial administration.'" Id. at 1257 (quoting Colorado River Water

24   Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976)). Courts must consider

25   several factors when deciding whether to abstain or stay an action under Colorado River:

26        (1) which court first assumed jurisdiction over the property in
          dispute; (2) the inconvenience of the federal forum; (3) the
27        desirability of avoiding piecemeal litigation; and (4) the order
          in which jurisdiction was obtained.

28

19

1    Id.  Additionally, the Supreme Court added two additional factors in <u>Moses H. Cone</u>

2    <u>Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 26 (1983), which are: (5) whether

3    federal or state law applies and (6) whether the state forum will be inadequate to protect

4    the plaintiff's rights.  Finally, since abstention must be viewed in a "flexible and

5    pragmatic way," the Ninth Circuit also considers: (7) whether a party is forum shopping

6    by coming into federal court.  <u>American Int'l</u>, 843 F.2d at 1259.  Applying these seven

7    factors to the facts of this case reveals that this case is precisely the sort that requires a

8    federal court to abstain or stay the action pending resolution of a state court proceeding.[6]

9        The first factor is which court first assumed jurisdiction over the property.  Since

10   there is no property in dispute, this factor is not relevant.  <u>American Int'l</u>, 843 F.2d at

11   1257-58.  ProMark's claim for money damages is not the sort of property contemplated

12   by <u>Colorado River</u> (but plainly the parties are subject to the Florida court's personal and

13   subject matter jurisdiction).  <u>Id.</u> at 1258.

14       The second factor is the inconvenience of the federal forum.  As explained above,

15   the Jaguars do no business in California, and have no offices, bank accounts or telephone

16   numbers here.  J. Weaver Aff. ¶ 13.  ProMark approached the Jaguars in Jacksonville,

17   Florida and the Jaguars executed the contract there.  J. Weaver Aff. ¶ 5.  More

18   importantly, all of the Jaguars' witnesses regarding distribution of the coupon books are

19   located in Jacksonville, Florida.  J. Weaver Aff. ¶ 12.  Since some are non-party

20   witnesses (like Winn-Dixie employees and former employees who negotiated and

21   executed the contract), they could not be compelled to attend trial in the Southern District

22   of California.  These facts all weigh in favor of abstention.  <u>Id.</u>

23       The third factor is the desirability of avoiding piecemeal litigation.  "Piecemeal

24   litigation occurs when different tribunals consider the same issue, thereby duplicating

25

26       [6] The Ninth Circuit has found that when a federal court abstains from exercising
     its jurisdiction under the <u>Colorado River</u> factors, the correct procedure is to stay the
27   action rather than dismiss it entirely.  <u>Attwood v. Mendocine Coast Dist. Hosp.</u>, 886 F.2d
     241, 243-44 (9th Cir. 1989).
28

FOLEY & LARDNER
LLP              SDCA_291011.1

1  efforts and possibly reaching different results." <u>Id.</u>  Since Florida has obtained

2  jurisdiction over the case and the parties – which ProMark did not contest – and has set a

3  trial for November 2006, the Florida state court will soon determine the parties'

4  respective rights and obligations under the Agreement.  If this Court does not abstain,

5  there is a very real potential that this Court would duplicate efforts of the state court and

6  it would create the possibility of inconsistent results. This factor also weighs in favor of

7  abstention. <u>Id.</u>

8  The fourth factor is which court obtained jurisdiction first.  The court should

9  consider not only which action was first filed, but also how much progress has been made

10  in the respective forums. <u>Id.</u>  In this case, the Florida state court action was not only first

11  filed (and ProMark served for over 20 days before it filed the California action), but the

12  Florida court has already set this matter for trial in November 2006 and the parties are

13  attempting to set a mediation for September 2006.  J. Tucker Aff. ¶ 6.  Following the

14  filing of ProMark's Complaint, the Jaguars removed the action to federal court, where it

15  contests jurisdiction, venue and moves for abstention. No other progress has been made

16  in this California case. This factor also weighs in favor of abstention. <u>Id.</u> at 1259.

17  The fifth factor is whether the federal or state law applies.  Since the Agreement

18  provides that it will be governed by Florida law, state law applies.  Absent federal law

19  implications, this factor is neutral.

20  The sixth factor is whether the state court can adequately protect ProMark's

21  interests.  ProMark cannot seriously dispute that a state court forum is inadequate, since it

22  filed this action in California state court and this action is before the federal court only by

23  virtue of the Jaguars removal.  Moreover, ProMark is asserting contract claims that must

24  be interpreted under Florida law.  Accordingly, Florida state courts are an adequate forum

25  and this factor also weighs in favor of abstention. <u>Id.</u>

26  Finally, the only party that can be said to be forum shopping is ProMark.

27  Although ProMark did not file in federal court, it elected to bring its claims in California,

28  despite this state's lack of personal jurisdiction or venue over the Jaguars, and despite the

21

1  existence of the Florida action.  Undoubtedly, ProMark perceived a more favorable forum

2  in California, as it begins its Complaint by describing the Jaguars as a "wealthy National

3  Football League team," "which is seeking to avoid its obligations under a contract signed

4  with a small San Diego based company." Comp. ¶ 1.  Moreover, the Jaguars were entitled

5  to file suit in Florida to protect its rights under the Agreement.  See Travelers Indemn.

6  Co. v. Madonna, 914 F.2d 1364, 1371 (9th Cir. 1990).  Accordingly, this factor also

7  weighs in favor of abstention.

8  **VI.    Conclusion**

9      For the foregoing reasons, the Jaguars move this Court to dismiss ProMark's

10 Complaint for lack or personal jurisdiction and lack of venue.  Alternatively, the Jaguars

11 move the Court to transfer the case to the Middle District of Florida, Jacksonville

12 Division.  Barring either of these results, the Jaguars alternatively move the Court to stay

13 this case pending resolution of the first-filed Florida action.

14

15 Dated: July _26_, 2006                            FOLEY & LARDNER LLP
                                                     Wendy L. Tucker
16

17

18                                                   _Wendy L Tucker_

19                                                   Wendy L. Tucker
                                                     Attorneys for Defendant,
20                                                   JACKSONVILLE JAGUARS,
                                                     LTD.
21

22

23

24

25

26

27

28

FOLEY & LARDNER
LLP

SDCA_291011.1

MOTION TO DISMISS, ETC.
CASE NO. 06-CV-1433 WQH-NLS