USDC SCAN INDEX SHEET

Promark Sports Inc v. Jacksonville Jaguars, et al                                                                Doc.

















```
GAC    8/1/06    9:09
3:06-CV-01433    PROMARK SPORTS INC V. JACKSONVILLE JAGUARS
*7*
*AFDT.*
```

Dockets.Justia.com

1  FOLEY & LARDNER LLP
   ATTORNEYS AT LAW
   402 W. BROADWAY, SUITE 2300
2  SAN DIEGO, CA 92101-3542
   TELEPHONE: 619.234.6655
3  FACSIMILE: 619.234.3510

4  WENDY L. TUCKER, BAR NO. 174407
   ATTORNEYS FOR DEFENDANT, JACKSONVILLE JAGUARS, LTD.



FILED
JUL 2 6 2006
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PROMARK SPORTS, INC., a Delaware Corporation,

    Plaintiff,

v.

JACKSONVILLE JAGUARS, LTD., a Florida Limited Partnership; JACKSONVILLE JAGUARS, a purported Florida Corporation, and Does 1 through 25 inclusive,

    Defendant.

Case No. 06-CV-1433 WQH-NLS

**AFFIDAVIT OF JAMES WEAVER IN SUPPORT OF THE JAGUARS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, MOTION TO DISMISS OR TRANSFER VENUE FOR IMPROPER FORUM OR, ALTERNATIVELY, MOTION TO ABATE OR STAY ACTION**

STATE OF FLORIDA

COUNTY OF DUVAL

BEFORE ME, the undersigned authority, personally appeared James Weaver, who being first sworn, deposes and says:

1.    My name is James Weaver and I am the Executive Director of Corporate Sponsorship for Jacksonville Jaguars, Ltd. ("the Jaguars"). I make this affidavit based upon my personal knowledge or based upon the books and records of the Jaguars, and I am competent to testify about all matters contained herein.

2.    On or about August 11, 2003, the Jaguars entered into a written agreement (the "Agreement") with ProMark, which Agreement is attached hereto as Exhibit "A."

1

JACK_550237.1

AFFIDAVIT OF JAMES WEAVER.
CASE NO. 06-CV-1433 WQH-NLS

ORIGINAL

3. In short, the Agreement provided that ProMark would solicit advertisements/coupons and then produce coupon books that would be sold through the Jaguars' retail partner, Winn-Dixie, for $1.

4. All sale proceeds would benefit the Jacksonville Jaguars Foundation, a non-profit charity.

5. ProMark approached the Jaguars about this undertaking in Jacksonville, Florida. ProMark designed a marketing initiative for these coupon books specifically to be carried out in the Jacksonville, Florida market.

6. Three hundred thousand coupon books were delivered to the Jaguars in Jacksonville, Florida. The coupon books were distributed only in Duval, St. Johns and Clay counties, all of which are in Florida. Specifically, approximately 50,000 books were distributed free of charge at one of the Jaguars' home games. The remaining 250,000 books were given to Winn-Dixie for sale at its stores in Duval, St. Johns and Clay counties.

7. No one from the Jaguars ever traveled to California for this Agreement. Nothing in the Agreement required the Jaguars to perform outside of Florida.

8. ProMark has alleged that the Jaguars failed to distribute the coupon books as required in the Agreement. In fact, however, the Jaguars did distribute 250,000 books to its retail partner, Winn-Dixie, and distributed the remaining 50,000 at one of its home games.

9. Based upon its mistaken belief that the Jaguars breached its performance obligations under the Agreement, ProMark demanded that the Jaguars pay it approximately $150,000 for the cost of producing all 300,000 coupon books, and threatened litigation.

10. However, the Jaguars were not obligated to pay ProMark any money under the Agreement. Rather, the Agreement required ProMark to bear the cost of producing the books.

11. The Agreement provided that it would be governed by Florida law.

2

12. The primary witnesses to the Jaguars' performance under the Agreement are: (1) myself, (2) Dan Connell, the Jaguars' former Marketing VP, who is no longer a Jaguars employee but who signed the Agreement and who, on information and belief, resides in or around Jacksonville, Florida, (3) Hallie Stiglitz, who is no longer a Jaguars employee but who coordinated distribution of the books with Winn-Dixie, and who, on information and belief, resides in or around Jacksonville, Florida, (4) Terry Derreberry, a Winn-Dixie employee, who coordinated distribution of the books for Winn-Dixie and resides in or around Jacksonville, Florida, (5) Bill Houston, who is the Jaguars' Winn-Dixie account executive and who has knowledge of the distribution to Winn-Dixie and resides in or around Jacksonville, Florida, (6) Nicola Hayes, the Jaguars' Coordinator of Corporate Sponsorship, has knowledge of the distribution of the books and who resides in or around Jacksonville, Florida, and (7) Gary Ravet, who is the CEO for ProMark and who, I believe, lives in California.

13. The Jaguars are not organized or licensed to do business in California, nor does it have a registered agent in California. It does not have offices, post office boxes, telephone listings or bank accounts in California. The Jaguars do not own or rent any real or personal property in California. Moreover, the Jaguars do not advertise, solicit business or make sales in California.

14. The only contact that the Jaguars have with California is occasional scouting for college football players and the sporadic playing of football games in California – which has only happened five times in the past ten years. Specifically, the Jaguars have played the following games in California:

    August 18, 1996 – at San Francisco (preseason)
    September 15, 1996 – at Oakland
    December 21, 1997 – at Oakland
    October 10, 2004 – at San Diego
    January 2, 2005 – at Oakland (2004 season)

3

JACK_550237.1

AFFIDAVIT OF JAMES WEAVER
CASE NO. 06-CV-1433 WQH-NLS

1     FURTHER, AFFIANT SAITH NOT.

2 STATE OF FLORIDA
COUNTY OF DUVAL

3

4 _____

5 JAMES WEAVER

    Sworn to (or affirmed) and subscribed before me, this 26th day of July, 2006, by

6 James Weaver.

7 _____
Signature of Notary

8

9 Leslie Rhonda Charles
_____
(Print, Type or Stamp, Commissioned Name

10 of Notary Public)

[Notary Seal: LESLIE RHONDA CHARLES, Notary Public - State of Florida, My Commission Expires Jul 26, 2010, Commission # DD 533322, Bonded By National Notary Assn.]

11 Personally known  ✓   OR Produced Identification _____
    Type of Identification Produced _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                        4

Case 3:06-cv-01433-WQH-NLS    Document 7    Filed 07/26/2006    Page 6 of 14



# AGREEMENT

This Agreement is made and entered into as of the 11th day of August, 2003, by and between Promark Sports, Inc., a Delaware corporation ("Promark"), and Jacksonville Jaguars, a ___Florida___ corporation (the "Team").

WHEREAS, Promark is in the business of designing and producing direct marketing programs; and

WHEREAS, Promark and the Team desire to work together in the design, production, and distribution of a direct marketing program as set forth in this Agreement.

NOW, THEREFORE, in consideration of the promises and mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1) **The Books:** Promark shall produce an integrated direct marketing and advertising program for the Team which shall include the following:

   a) Promark shall produce, for distribution and sale by the Team, in accordance with the plan attached hereto as Exhibit "A" (the "Distribution Plan"), Savings Books containing advertisements and offers for discounts on select goods and services (the "Books"). Each year during the term of this Agreement, Promark shall deliver the Books to the Team, at such location as is designated by the Team, on or before the dates set forth on the Distribution Plan. All Books shall be produced at Promark's sole cost and expense. Promark shall produce the Books, in accordance with the following specifications:
   
   Size: Approximately 4 inches (horizontal) x 6 inches (vertical)
   Cover: Gloss cover stock, four color
   Pages: Gloss paper stock, four color

   b) Promark shall provide the Team with advertising for its game day publications, in accordance with Exhibit "C" attached hereto.

   c) Promark shall provide the Team with a banner ad and link on its www.promarksports.com web site with a link to the Team's official web site.

   d) The Team shall promote the sale and distribution of the Books on its official web site.

2) **Book Content:**

   a) Except as set forth in 2(b) below, Promark shall be responsible for securing all content, including national benefits and offers, to be included in the Books. Any such content shall be subject to the reasonable approval of Team.

   b) The Team shall be allocated the outside front cover and ten one-sided pages in the Books for insertion of offers and/or other messages designated by the Team and/or the Team advertisers or sponsors.

3) **Production and Distribution of the Books:**
**Promark will do the Following:**
   a) Print the Books, including the cover and pages provided by the Team.
   b) Deliver to Team that number of Books set forth on the Distribution Plan, on the date set forth therein.

**The Team will do the Following:**
   a) Provide Promark with those production materials set forth on Exhibit "B" attached hereto, in accordance with the production schedule set forth therein. The attached Exhibit "B" shall be revised on or before January 1 of each year to reflect the production schedule for such year. In the event that materials are sent to Promark that are not complete or in fully compliant with the specifications set forth in Exhibit "B", those materials shall be returned to the Team.
   b) Distribute and sell the Books in accordance with the Distribution Plan, Exhibit "A".
   c) Within thirty (30) days of the completion of the distribution of the Books, as set forth in the Distribution Plan, provide Promark with an affidavit, in the form of Exhibit "D", attesting to

8/15/2003                                                            1                                                    TEAM AGREEMENT: FOOTBALL (2003)



    i)  The distribution of the Books, in accordance with the Distribution Plan
    ii)  Setting forth the amount of funds raised through the sale of the Books; and
    iii)  Attesting to the fact that 100% of the proceeds raised through the sale of the Books has been contributed to the beneficiary organization set forth on exhibit "A".

*[Handwritten: Team shall have the right to terminate this Agreement on 15 days notice at the end of each year]*

  4)  **Term:** The term of this Agreement shall extend through December 31, 2005. Promark shall remain responsible after the expiration of the term to use its best efforts to make sure that all vendors honor all benefits set forth in the Books, for the length of time set forth on each respective offer.

  5)  **Representations and Warranties:**
The parties hereto respectively represent and warrant as follows:

    a)  Each party shall indemnify and hold the other party harmless from and against any and all claims, actions, proceedings, judgments, expenses, damages, and liabilities, including reasonable attorney's fees, arising in connection with the services to be performed by them hereunder due to their negligence or failure to perform in accordance with the terms of this Agreement.

    b)  Neither the execution or delivery of this Agreement nor the performance of such party's respective obligations hereunder will result in a violation of or conflict with any other agreement by which each respective party is bound.

On this one we have to protect ourselves against competitive books. With other teams we have taken out "for the one year after" and it's been ok.

  6)  **Non Competitions:** The parties hereby agree that during the term of this Agreement, the Team shall not distribute at the stadium on Game Day or otherwise, any direct marketing that involves the delivery of coupon books, or benefit books that are the same as or similar to the Books.

  7)  **Miscellaneous:**

    a)  This Agreement may not be modified or amended, and no provision contained in it may be waived, except in writing signed by duly authorized officers of both parties.

    b)  Any rights and remedies which the parties may have under this Agreement with respect to the unperformed obligations of a party or any of the representations and warranties set forth herein shall survive the expiration or termination of this Agreement.

    c)  The validity, interpretation, and performance of this Agreement shall be governed by and construed under the laws of the State of Florida. Should any provision(s) of this Agreement be deemed invalid for any reason, such invalidity shall not affect the validity of any other provisions of this Agreement, which other provisions shall remain in full force and effect as if this Agreement had been executed with the invalid provision(s) eliminated.

    d)  This Agreement, and the exhibits attached hereto, constitutes the entire agreement between the parties with respect to the services referred to herein. Any prior agreements, representations, negotiations, or undertaking dealing with the subject matter of this Agreement are superseded hereby.

    e)  The relationship between the parties shall be as independent contractors and nothing contained herein shall be deemed to create any association, partnership, joint venture or relationship of principal an agent or master and servant between the parties hereto or any affiliates or subsidiaries thereof, or to provide either party with the right, power or authority, whether expressed or implied, to create any such duty or obligation on behalf of the other party.

    f)  Any notice, request, demand, or other communication required or permitted hereunder shall be in writing postage prepaid, by overnight delivery, to the party to be notified. All communications will be deemed given when received. The address for the parties for the purposes of such communications as set forth below or to such other party address that either party shall designate in writing by notice given to the other party pursuant to this section. Any approvals required by this Agreement shall be deemed given five (5) days after the date that the request for such approval is given as set forth above, unless a written notice of disapproval is received.

    g)  *[struck through: The Jaguars will make the "best effort" to provide for purchase to Promark Sports four (4) Super Bowl tickets during the year of each contract, at the team's cost.]*

8/15/2003                 2               TEAM AGREEMENT: FOOTBALL (2)

Aug-15-03 11:48A                                                                                          P.04

8. **Termination.**

(a) In addition to any right of termination granted elsewhere in this Agreement, either party shall have the right at any time to terminate this Agreement, without prejudice to any other legal rights to which such terminating party may be entitled, upon the occurrence of any one or more of the following:

(i) Default by the other party in performance of any of the material provisions of this Agreement, which default is not cured within fifteen (15) days following receipt of written notice of such default by the defaulting party;

(ii) If any of the representations or warranties made by the other party in this Agreement shall prove to be untrue in any material respect and is not cured, if capable of being cured, within fifteen (15) days following receipt of written notice thereof by the responsible party; or

(iii) The making by the other party of an assignment for the benefit of creditors, or the appointment of a trustee, receiver or similar officer of any court for such party or for a substantial part of its property, whether with or without its consent, or the institution of bankruptcy, composition, reorganization, insolvency or liquidation proceedings by or against the other party, if such proceedings shall not be dismissed within sixty (60) days from the date of the institution thereof.

IN WITNESS WHEREOF, the parties hereto, having fully accepted and agreed to the terms set above, have caused this Agreement to be executed by their respective officers thereunto duly authorized as of date first above written.

Promark Sports, Inc.  
A Delaware corporation  
By: _____  
Title: Pres  
Date: 8-15-03  

Address: 1020 Prospect Street, Suite 301  
La Jolla, CA 92037

Jacksonville Jaguars  
A ____ corporation  
By: _____  
Title: SVP  
Date: 8/19  

Address: One Alltel Stadium Place  
Jacksonville, FL 32202

8/15/2003                                        3                                TEAM AGREEMENT: FOOTBALL (2003)



Aug-15-03 11:48A

P.05

*Handwritten note: Need to add this from prior deal*

# ADDENDUM TO THE FAN ADVANTAGE BOOK AGREEMENT
## BETWEEN
## JACKSONVILLE JAGUARS, LTD.
## AND
## PROMARK SPORTS, INC.

This Addendum is incorporated in and is a part of the above Agreement. To the extent that this Addendum conflicts with or differs from the body of the Agreement, this Addendum shall control in all respects. All capitalized terms not otherwise defined in this Addendum shall have the meaning given those terms in the Agreement.

1. Promark shall be entitled to solicit national merchant offers and benefits for the Book. *[handwritten: bottled water]* All merchants and offers proposed to be included by Promark shall be subject to the review and approval of Team. Promark agrees to use its best efforts to insure that all merchants or offers in the Book are acceptable to Team. Promark agrees not to include merchants or offers in the Book that conflict with the exclusive sponsors of Team or the NFL. At the current time the exclusive sponsors of Team include those in the banking, hospital and medical care, television and radio, ~~automobile and truck~~, beer, soda and isotonic beverage categories. From time to time, Team may grant further exclusive rights and Team undertakes to use best efforts to inform Promark of such relationships.

2. Promark shall not use in any way the corporate or tradename(s), trademark(s), service mark(s), logo(s) or other identifications of Team or its affiliates without the prior written consent of Team; provided, however, that Promark will be entitled to reasonable use of the corporate name or trademarks, tradenames, service marks, logos or other identifications of Team in conjunction with the production and printing of the Book permitted under this Agreement. In addition, Promark shall be entitled to reference Team and the Book in promotional material that lists names or includes examples of current and past program participants. Such references shall be subject to prior approval of Team, not to be unreasonably withheld. No merchant participating in the Book shall have any right to use the corporate or tradename(s), trademark(s), service mark(s), logo(s) or other identifications of Team or its affiliates without the prior written consent of Team. Any consent granted to Promark or any merchant to use the corporate or tradename(s), trademark(s), service mark(s), logo(s) or other identifications of Team shall be subject to the requirement that prior approval of Team shall be required for each such use, whether or not this requirement is stated in the consent.

   Promark agrees that neither it nor its affiliates will create or develop any tradenames, trademarks, service marks, logos or other intellectual property that indicates or implies a connection, affiliation, endorsement, sponsorship or other relationship between PRomark or any product or service of any merchant and Team.

3. Notwithstanding the provisions of Section 6 of the Agreement, in the event that the NFL or any affiliate engages in a program to distribute coupon books or benefit books similar to the Book, Team shall not be restricted from participating in that program(s). Promark acknowledges that the NFL has engaged in direct marketing programs and Team has and intends to make coupon and benefit offers to its fans in the stadium, by mail, in advertisements, electronically and on its web site.

4. The Agreement is subject to the Constitution and Bylaws of the NFL.

EXHIBIT "A"

## Jacksonville Jaguars

### DISTRIBUTION PLAN
### 2003 Making A Difference Books

Quantity of Books to be delivered by Promark and sold by Team: 300,000

Delivery Date: (not before 9/20/03) September 15, 2003

Delivery Address: Pending

Team Contact Person For Delivery:

    Name: Hallie Stiglitz

    Telephone: 904-633-2258

The Books shall be distributed and sold by the Team in accordance with the following plan:

    Distribution/Sale Period: September till all sold

    Participating Retailer(s): Winn Dixie

    Designated Beneficiary of 100% of Proceeds from Sale of Books: Jacksonville Jaguars Foundation

    Program Which the Proceeds from the Sale of the Books Will Support:

    **Honor Rows, Straight Talk, Playbooks**

Aug-15-03  11:48A                                                                                       P.07

## PRODUCTION SPECIFICATIONS

Items to be delivered by the team
By July 11, 2003: Cover
By July 25, 2003: Team pages

Promark's Savings Books are a CMYK, 4-color process, full bleed publication that has a trim size of 4" x 6". Promark utilizes a Macintosh-based system, and can accept artwork designed only in QuarkXpress, Photoshop, and Illustrator. All final ads, including their supporting files, screen fonts and images must be submitted in a Quark document with a final size of 4"x 6" including bleed.

**IMPORTANT**. Please include a color proof when submitting ad. If a color proof is not provided, Promark will assume approval rights. All images should be CMYK, resolution must be 300 dpi, and all text must be saved as outlines (where applicable).

**FULL PAGE AD**
Live Size: 3.5" wide by 5.5" high
Trim Size: 4" wide by 6" high
Bleed Size: 4.25" wide by 6.25" high
NON-BLEED AD SAME AS LIVE AREA

**HALF PAGE AD**
Live Size: 3.5" wide by 2.375" high
Trim Size: 4" wide by 2.875" high
Bleed Size: 4.25" wide by 3.125" high
NON-BLEED AD SAME AS LIVE AREA

**QuarkXpress Document Settings:**

SIZE Width: 4" Height: 6"

**MARGIN GUIDES**
Top: .25" Bottom: .25" Left: .25" Right: .25"
These margin guides create your "live area".
All Text must be placed within these boundaries.
Bleed on ad should be .125" on each side for bleeds. All double spreads must be created as TWO separate Quark documents.

**SUBMITTING ARTWORK**
Please label all material with company name and affiliated team if any

**MAILING ADDRESS**
Promark Sports
Attn: Graphics
1020 Prospect St., Ste. 301
La Jolla, CA 92037

**E-MAIL**
graphics@promarksports.com

**PHONE**
(858) 551-2999



EXHIBIT "C"

8/15/2003                                               5                            TEAM AGREEMENT: FOOTBALL (20(

## GAME DAY PUBLICATION ADVERTISING

Subject to availability, Promark may have the right to purchase from the Team pages in its game day programs and publications at 50% standard rates (as discussed by Macky Weaver & David Cope and on the following terms and conditions:

**Game Day:**
Editions (Regular Season ONLY): _____
Pages to be purchased by Promark: _____
Sold Circulation: _____

**Production:**
Specifications: (to be provided by Team not later than July 1, 2003)
Promark Materials Delivery Date: Two weeks before first distribution date (not before 8/15/03).
Promark to be provided with proofs of all ads, for approval before printing.
Promark to be provided with 20 samples of each edition in which its ads appear.

Content: Promark will re-sell the pages that it is purchasing from the Team to leading national advertisers. Team shall have the right to reject any offer that it believes conflicts with any of its sponsors or advertisers or which promotes a product or service with which the Team does not want to be associated. Team shall notify Promark in writing of its rejection of such offer and Promark shall have the option of either replacing such offer with another that is acceptable to Team or reducing the number of pages purchased by it under this Agreement.

**Price and Terms:**
Published rate card per page: _____
Price to be paid by Promark per page: _____
Terms: 50% to be paid upon delivery of artwork; 50% to be paid upon receipt of affidavit of confirmed sold circulation.

Hospitality: Subject to availability, Promark may puchase from Team the following hospitality package: Please change to "best efforts".

_____
_____
_____


EXHIBIT "D"

Affidavit of Distribution

*NFL 2003 Making a Difference Savings Books*

Team:

Quantity of Books Received From Promark:

Date Received:

Distribution/Sales Information: The Books were distributed and sold by the Team as follows:

    Distribution/Sale Period: _____

    Participating Retailer(s): _____

    Designated Beneficiary of 100% of Proceeds from Sale of Books: _____

    _____

    Number of Books Sold: _____

    Amount Contributed To Designated Beneficiary: _____

    Program Which the Proceeds from the Sale of the Books Will Support:

    _____

I hereby certify under penalty of perjury that the foregoing information is true and correct.

Team: _____

By: _____

Name _____
Title: _____
Date: _____

                              Mail to: Promark Sports, Inc.
                              1020 Prospect Street, Suite 301
                              La Jolla, CA 92037



